IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

| | |
|---|---|
| SABRINA MAZE, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | 16-cv-1138-TMP |
| ) | |
| CAROLYN COLVIN, ACTING ) | |
| COMMISSIONER OF SOCIAL ) | |
| SECURITY ADMINISTRATION, ) | |
| ) | |
| Defendant. ) | |

**ORDER AFFIRMING THE COMMISSIONER'S DECISION**

Before the court is plaintiff Sabrina Maze's appeal from a final decision by the Commissioner of Social Security[1] ("Commissioner") denying her application for disability insurance benefits under Title II of the Social Security Act ("Act"), 42 U.S.C. §§ 401 *et seq*. On September 26, 2016, the parties consented to the jurisdiction of the United States magistrate judge pursuant to 28 U.S.C. § 636(c). (ECF No. 13.) This case was subsequently reassigned to the undersigned on March 13, 2017. For the reasons set forth below, the decision of the Commissioner is affirmed.

I.   PROCEDURAL HISTORY

---

[1]Carolyn W. Colvin was the Acting Commissioner of Social Security at the time this case was filed.

Maze's disability application record spans thirty years and shows that at various times she has applied for supplemental security income, childhood disability benefits, and disability insurance benefits. (R. at 27–37, 929–38, 947–60.) The record is missing several documents. Some of these omissions, such as the absence of a childhood disability benefits reconsideration form, are acknowledged by the record, (R. at 959), while others, such as the absence of the original Title II applications, are not discussed either in the record or the parties' briefs. In addition, several of the Social Security forms contain obvious impossibilities — such as the initial disability determination forms stating Maze applied for disability on May 31, 1983, and alleged the disability began on January 31, 2003. (R. at 27, 29, 32, 34.) Despite these technical defects in the record, Maze's Title II claim for disability insurance benefits appears to have followed the requisite procedural steps. The Social Security Administration ("SSA") denied her application initially and upon reconsideration. (R. at 27–34, 45.) At Maze's request, a hearing was held before an Administrative Law Judge ("ALJ") on September 15, 2014. (R. at 961–76.) During this hearing, Maze amended her alleged disability onset date to December 1, 2010. (R. at 965.) On October 31, 2014, the ALJ issued a decision denying Maze's request for benefits after finding that Maze was not under a disability because she retained the residual functional capacity

("RFC") to perform work existing in significant numbers in the national economy. (R. at 13–26.) The SSA's Appeals Council denied Maze's request for review. (R. at 8.) Therefore, the ALJ's decision became the final decision of the Commissioner. (Id.) Subsequently, on June 6, 2016, Maze filed the instant action. (ECF No. 1.) Maze argues that the ALJ erred by (1) improperly weighing the medical source opinions in the record, (2) improperly finding that she did not need to use a cane, (3) improperly evaluating the scope and effects of her mental limitations, and (4) improperly applying the Medical-Vocational Guidelines, 20 C.F.R. Part 404, Subpart P, App'x 2 ("grids").

## II. CONCLUSIONS OF LAW

**A. Standard of Review**

Under 42 U.S.C. § 405(g), a claimant may obtain judicial review of any final decision made by the Commissioner after a hearing to which she or he was a party. "The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). Judicial review of the Commissioner's decision is limited to whether there is substantial evidence to support the decision and whether the Commissioner used the proper legal criteria in making the decision. Id.; Burton v. Comm'r of Soc. Sec., No. 16-4190, 2017 WL 2781570,

at *2 (6th Cir. June 27, 2017); Cole v. Astrue, 661 F.3d 931, 937 (6th Cir. 2011); Rogers v. Comm'r of Soc. Sec., 486 F.3d 234, 241 (6th Cir. 2007). Substantial evidence is more than a scintilla of evidence but less than a preponderance and is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Kirk v. Sec'y of Health & Human Servs., 667 F.2d 524, 535 (6th Cir. 1981) (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)).

In determining whether substantial evidence exists, the reviewing court must examine the evidence in the record as a whole and "must 'take into account whatever in the record fairly detracts from its weight.'" Abbott v. Sullivan, 905 F.2d 918, 923 (6th Cir. 1990) (quoting Garner v. Heckler, 745 F.2d 383, 388 (6th Cir. 1984)). If substantial evidence is found to support the Commissioner's decision, however, the court must affirm that decision and "may not even inquire whether the record could support a decision the other way." Barker v. Shalala, 40 F.3d 789, 794 (6th Cir. 1994) (quoting Smith v. Sec'y of Health & Human Servs., 893 F.2d 106, 108 (6th Cir. 1989)). Similarly, the court may "not try the case de novo, resolve conflicts in the evidence or decide questions of credibility." Ulman v. Comm'r of Soc. Sec., 693 F.3d 709, 713 (6th Cir. 2012) (quoting Bass v. McMahon, 499 F.3d 506, 509 (6th Cir. 2007)). The Commissioner, not the court, is charged with the duty to weigh the evidence and to resolve material

conflicts in the testimony.  Walters v. Comm'r of Soc. Sec., 127 F.3d 525, 528 (6th Cir. 1997); Crum v. Sullivan, 921 F.2d 642, 644 (6th Cir. 1990); Prater v. Comm'r of Soc. Sec., No. 114CV01221STATMP, 2017 WL 2929479, at *1 (W.D. Tenn. July 10, 2017).

**B.   The Five-Step Analysis**

The Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1).  Additionally, section 423(d)(2) of the Act states,

> An individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work. For purposes of the preceding sentence (with respect to any individual), "work which exists in the national economy" means work which exists in significant numbers either in the region where such individual lives or in several regions of the country.

Under the Act, the claimant bears the ultimate burden of establishing an entitlement to benefits. Oliver v. Comm'r of Soc. Sec., 415 F. App'x 681, 682 (6th Cir. 2011). The initial burden is on the claimants to prove they have a disability as defined by

the Act. Siebert v. Comm'r of Soc. Sec., 105 F. App'x 744, 746 (6th Cir. 2004) (citing Walters, 127 F.3d at 529); see also Born v. Sec'y of Health & Human Servs., 923 F.2d 1168, 1173 (6th Cir. 1990). If the claimant is able to do so, the burden then shifts to the Commissioner to demonstrate the existence of available employment compatible with the claimant's disability and background. Born, 923 F.2d at 1173; see also Griffith v. Comm'r of Soc. Sec., 582 F. App'x 555, 559 (6th Cir. 2014).

Entitlement to social security benefits is determined by a five-step sequential analysis set forth in the Social Security Regulations. See 20 C.F.R. § 404.1520. First, the claimant must not be engaged in substantial gainful activity. See 20 C.F.R. § 404.1520(b). Second, a finding must be made that the claimant suffers from a severe impairment. 20 C.F.R. § 404.1520(a)(4)(ii). In the third step, the ALJ determines whether the impairment meets or equals the severity criteria set forth in the Listing of Impairments contained in the Social Security Regulations. See 20 C.F.R. § 404.1520(d), 404.1525, 404.1526. If the impairment satisfies the criteria for a listed impairment, the claimant is considered to be disabled. On the other hand, if the claimant's impairment does not meet or equal a listed impairment, the ALJ must undertake the fourth step in the analysis and determine whether the claimant has the RFC to return to any past relevant work. See 20 C.F.R. § 404.1520(a)(4)(iv), (e). If the ALJ

determines that the claimant can return to past relevant work, then a finding of not disabled must be entered. Id. But if the ALJ finds the claimant unable to perform past relevant work, then at the fifth step the ALJ must determine whether the claimant can perform other work existing in significant numbers in the national economy. See 20 C.F.R. § 404.1520(a)(4)(v), (g). Further review is not necessary if it is determined that an individual is not disabled at any point in this sequential analysis. 20 C.F.R. § 404.1520(a)(4).

**C. Weight Given to Medical Source Opinions**

Maze argues that the ALJ gave too much weight to the joint opinion of medical examiners Paula Miller, Ph.D., and William Fulliton, Ph.D., and to the opinion of medical consultant Edward Sachs, Ph.D. Dr. Miller and Dr. Fulliton examined Maze on April 10, 2013. (R. at 345-49.) They noted that she had adequate hygiene, appropriate eye contact, and an unimpaired gait. (R. at 345.) During the interview, Maze told them she graduated high school in 1992 and received special education while in school. (R. at 346.) She also stated that she worked from 2000 to 2010 at an appliance factory but left work after the factory closed and had not worked since. (Id.) With respect to her psychological condition, Maze informed them that she had been previously hospitalized for psychiatric reasons and had also attempted to receive outpatient mental health treatment in 2012 but was unable

to receive such treatment for financial reasons. (R. at 346, 348.) She reported that she has experienced auditory and visual hallucinations ever since she was a child. (R. at 347.) Due to her description of the hallucinations, Dr. Miller and Dr. Fulliton noted that they appeared to be dreams and not psychotic symptoms. (R. at 347.) Maze attributed her depression and anxiety to her hallucinations and to several other traumatic life experiences. (Id.) She stated that she was taking Citalopram for depression and Ativan to help her sleep. (R. at 346.) Regarding her activity level, Maze indicated that she can grocery shop on her own using a mobile shopping cart, can perform household chores with her son's help, and has one friend who visits her occasionally. (R. at 347.) She also stated that her mental condition makes it challenging for her to sleep and that she does not socialize with family. (Id.)

During the mental status examination, Dr. Miller and Dr. Fulliton observed that Maze was alert and oriented. (R. at 347.) She had no articulation problems and communicated with clear thought processes. (Id.) She demonstrated adequate long-term memory by correctly recalling personal information but had difficulty analyzing complex verbal abstractions. (R. at 348.) Dr. Miller and Dr. Fulliton concluded that Maze has mild impairments affecting her abilities to interact with others and understand work-related instructions, moderate impairments affecting her abilities to sustain concentration and persistence,

and no impairment affecting her ability to adapt to changes in a work environment. (Id.) They assigned her a Global Assessment of Functioning ("GAF") score of 60. (Id.)

Dr. Sachs reviewed Maze's medical records and provided an opinion regarding her mental health condition on April 30, 2013. (R. at 347-432.) Most of this opinion consists of checked boxes and addresses time periods prior to the revised alleged disability onset date. (Id.) However, for the relevant time period, Dr. Sachs provided a written evaluation in which he described Maze's psychological history, including her self-reported psychological condition, a psychological evaluation completed by her high school when she was 18, and the opinion of Dr. Miller and Dr. Fulliton. (R. at 414.) Dr. Sachs noted that Maze did not receive psychological treatment or take medication for her psychological conditions. (Id.) Dr. Sachs concluded that Maze suffers from depression and anxiety of mild to moderate severity but has no marked limitations resulting from her condition that might preclude basic work-related functions. (Id.) Dr. Sachs also indicated that Maze has moderately limited abilities to understand and remember detailed instructions, carry out detailed instructions, maintain attention and concentration for extended periods of time, and respond appropriately to changes in the work setting. (R. at 416-17.)

After these opinions were written, Maze received mental health treatment from a nurse practitioner and a licensed professional counselor at Pathways Behavioral Health Services ("Pathways") from September 3, 2013, to July 23, 2014. (R. at 437-51, 740-817.) Maze attended a total of seven sessions that lasted an average of an hour. (Id.) At these sessions, Maze's mental health care providers consistently noted that she demonstrated signs of depression and anxiety. (R. at 437, 450-51, 768, 780, 788-89, 791, 793, 796, 798-99, 802, 805.) They repeatedly assigned her a GAF score of 48 and provided her with a Loxapine prescription to help with her hallucinations. (R. at 448, 740, 748-49, 760, 772-73, 783, 785, 813, 815.) However, they also noted that she was always alert and oriented. (R. at 744, 755, 767, 779.) Her concentration and impulse control were nearly always intact. (R. at 744, 755, 767, 779, 808.) And, while her speech was at times childish or hesitant, she was able to actively engage in the sessions and communicate clearly. (R. at 445-46, 744, 756, 768, 779, 793, 799, 804.)

The ALJ gave great weight to the opinions of Dr. Miller, Dr. Fulliton, and Dr. Sachs. (R. at 24.) He explained that these opinions were consistent with the case records and supported by clinical findings. (Id.) He also noted that the new evidence received into the record after Dr. Sachs formed his opinion did not provide any new or material information that would

significantly alter the opinion. (Id.) In addition, the ALJ considered the treatment notes from Pathways and pointed out that the every-three-months or as-needed approach to the appointment scheduling suggested that the Pathway care providers did not consider Maze's mental health condition to be severe. (R. at 22.)

An ALJ employs a "sliding scale of deference" for medical opinions depending upon each opinion's source. Norris v. Comm'r of Soc. Sec., 461 F. App'x 433, 439 (6th Cir. 2012). Opinions from treating sources typically merit the most deference, followed by opinions from examining sources, and then from non-examining sources. See 20 C.F.R. § 404.1527(c)(1)-(2). When weighing medical source opinions, the ALJ must consider various factors, including the length and nature of the relationship, the frequency of exams, the evidence upon which the medical source bases her or his opinion, the opinion's consistency with the record as a whole, whether the source has specialized in her or his area of practice, and any other relevant factor. 20 C.F.R. § 404.1527(c)(2)-(6).

Maze argues that Dr. Miller's, Dr. Fulliton's, and Dr. Sachs's opinions cannot support the ALJ's decision because they were formed before Maze received mental health treatment at Pathways. She also argues that Dr. Miller and Dr. Fulliton's opinion cannot provide support because it was formed without them having access to Maze's complete medical records. The court finds that the ALJ's analysis complied with necessary procedural requirements. He

evaluated both opinions by applying all of the relevant statutory factors. He also considered the effect the Pathway notes might have on Dr. Sachs's opinion and determined it would not have significantly altered the opinion. The court recognizes that the ALJ's evaluation of the effect of the Pathways treatment notes could be disputed because there are portions of the Pathways notes that contradict the earlier opinions. For example, the notes indicate that Maze truly does suffer from hallucinations. (R. at 740-45, 751, 763, 798, 805.) However, a reasonable mind could accept that the ALJ's decision was correct. Therefore, substantial evidence supports the ALJ's decision. See Gibbens v. Comm'r of Soc. Sec., 659 F. App'x 238, 243 (6th Cir. 2016) ("Substantial evidence lies between a preponderance and a scintilla; it refers to relevant evidence that 'a reasonable mind might accept as adequate to support a conclusion.'" (quoting Rogers, 486 F.3d at 241)).

Turning to Maze's arguments about Dr. Miller and Dr. Fulliton's access to her medical records, the court finds that her claim lacks evidentiary support. When the SSA asks a claimant to submit to a consultative examination, the SSA is required to provide the examiner with "any necessary background information" about the claimant's condition. 20 C.F.R. § 404.1517. Maze claims that the opinion's failure to reference relevant school records documenting her mental health limitations amounts to proof that

the examiners did not have access to these school records. For support, she cites Brantley v. Comm'r of Soc. Sec., 637 F. App'x 888, 895 (6th Cir. 2016). Maze's situation is distinguishable from Brantley. In Brantley, the Sixth Circuit held that the SSA violated 20 C.F.R. § 404.1517 when it did not provide examining doctors with any background information about a claimant's medical history. Id. at 894–97. The opinion of one of the doctors in Brantley made it clear that the records were missing by stating, "It would be very helpful to have some objective medical records to further explain [the claimant's] difficulties." Id. at 890. Unlike in Brantley, Dr. Miller and Dr. Fulliton stated in their opinion that they performed a "Review of Records." (R. at 345.) Maze has not provided any evidence to show that 20 C.F.R. § 404.1517 has been violated. Thus, the court finds that the ALJ complied with all requirements when analyzing Dr. Miller's, Dr. Fulliton's, and Dr. Sachs's opinions and properly relied upon them as part of the substantial evidence supporting the RFC determination.

**D. Maze's Cane Usage**

Maze argues that the ALJ erred in finding that her need to use a cane does not impede her ability to perform a full range of sedentary work. The record is filled with conflicting information about Maze's ability to walk. On the one hand, there are her personal descriptions of her limited ability to walk, (R. at 82,

93-94, 967, 979), a doctor's prescription for a cane, (R. at 104), and observations by various health care providers that Maze has a slow or limping gait, (R. at 631, 772, 784, 883.) On the other hand, there are descriptions from a physician who examined Maze that suggest she fakes her walking limitations, (R. at 342), x-rays showing no abnormalities in her back or right hip, (R. at 654), and observations by various health care providers that she walks normally, (R. at 213, 703, 706, 710, 713.) Further complicating this medical history are the records showing that she attended thirteen physical therapy sessions focused on improving her mobility and that she experienced mildly positive results. (R. at 882-910.) After reviewing the record, the ALJ found that the record does not show evidence of a prescription for a cane or that any type of ambulation aid was necessary. (R. at 22.)

The ALJ was mistaken in finding that the record lacks evidence of a prescription for a cane. Nonetheless, a plethora of evidence still undermines Maze's claim that she needs a cane, and as mentioned in the standard of review section, it is the duty of the ALJ, not the court, to resolve conflicts in evidence. See Perry v. Comm'r of Soc. Sec., No. 17-4182, 2018 WL 2470915, at *2 (6th Cir. June 4, 2018). Because substantial evidence in the record supports the ALJ's conclusion, the court finds that the ALJ did not err when determining that Maze does not need to use a cane. See Shepard v. Comm'r of Soc. Sec., 705 F. App'x 435, 442 (6th

Cir. 2017) ("Our job is only to ensure that the Commissioner's determination is supported by substantial evidence.").

**E.    Maze's Mental Health Limitations**

Maze claims that the ALJ erred by determining that her hallucinations, limitations in concentration, borderline intellectual functioning, and low GAF score do not impede her ability to perform a full range of sedentary work.  Although Maze claims that the ALJ erred at step five, this claim amounts to a step-four argument challenging the ALJ's RFC determination.  The ALJ found that Maze "has the residual functional capacity to perform the full range of unskilled sedentary work . . . except [Maze] can perform only simple, routine tasks and would work better with objects versus people."  (R. at 20.)  In the analysis explaining his RFC determination, the ALJ discussed the significance of all of the evidence in the record related to Maze's mental health, including reviewing the treatment notes from Pathways, assessing the importance of the various GAF scores assigned to Maze, evaluating the Maze's descriptions of her mental health limitations, and weighing the opinions of the medical sources.  (R. at 22-24.)  The ALJ found it significant that Maze stopped working due to the factory shutting down rather than as a result of her health limitations.  (R. at 24.)

A claimant's RFC is "the most [the claimant] can still do despite [the claimant's] limitations."  20 C.F.R. §

404.1545(a)(1). The ALJ must assess the claimant's RFC based on all of the relevant evidence in the record. 20 C.F.R. § 404.1545(a)(3); see also SSR 96-8P, 1996 WL 374184, at *3 ("The RFC assessment is a function-by-function assessment based upon all of the relevant evidence of an individual's ability to do work-related activities."). "[T]he ALJ is charged with the responsibility of evaluating the medical evidence and the claimant's testimony to form an 'assessment of [her] residual functional capacity.'" Webb v. Comm'r of Soc. Sec., 368 F.3d 629, 633 (6th Cir. 2004) (alteration in original) (quoting 20 C.F.R. § 416.920(a)(4)(iv)). While ALJs may not "cherry pick[] evidence," they may "neutrally . . . weigh[] the evidence." White v. Comm'r of Soc. Sec., 572 F.3d 272, 284 (6th Cir. 2009).

For the reasons discussed above, the ALJ did not err when weighing the medical source opinions in the case. Furthermore, the ALJ properly considered all of the evidence in the record, including the mental health counseling sessions at Pathways and Maze's reason for leaving her last job. See Maloney v. Apfel, 211 F.3d 1269, 2000 WL 420700, at *2 (6th Cir. 2000) (finding it indicative that a claimant's impairments were not severe when the claimant "stopped working for reasons other than her illness").

The ALJ also properly assessed the significance of the GAF score of 48 that Pathways healthcare providers assigned to Maze. "A GAF score of 41–50 'reflects the assessor's opinion that the

subject has serious symptoms or serious impairment of social or occupational functioning.'" Miller, 811 F.3d at 832 (quoting Keeton v. Comm'r of Soc. Sec., 583 F. App'x 515, 520 n.2 (6th Cir. 2014)). However, the Sixth Circuit takes a "case-by-case approach to the value of GAF scores" by looking the scores' consistency with the record. Id. at 836. A GAF score, on its own, cannot be the basis of a claimant's RFC. See Myland v. Comm'r of Soc. Sec., No. 17-1592, 2017 WL 5632842, at *1 (6th Cir. Nov. 13, 2017). In this case, the ALJ determined that the GAF score of 48 was not supported by Maze's mental health treatment record, especially in light of the absence of the serious symptoms associated with so low of a score, such as an inability to keep a job, suicidal ideation, or repeated criminal behavior. (R. at 23.) Thus, the court finds that the ALJ properly evaluated Maze's mental health limitations.

**F. Application of the Medical Vocational Guidelines**

Maze argues that, when determining whether there are a significant number of jobs that she can work despite her limitations, the ALJ should not have treated the grids found at 20 C.F.R. Part 404, Subpart P, App'x 2 as mandatory, but rather employed them as a framework for his analysis. Maze further claims that, because the grids only apply to her as a framework, the ALJ should have consulted with a vocational expert.

The grids specify whether a claimant should be found disabled by considering the claimant's exertional capacity, age, education, and previous work experience. See Amir v. Comm'r of Soc. Sec., 705 F. App'x 443, 451 (6th Cir. 2017). "The grids account for only exertional limitations, which are defined as the limitations 'imposed by [the claimant's] impairment(s) and related symptoms, such as pain, that affect only [the claimant's] ability to meet the strength demands of jobs.'" Id. (quoting 20 C.F.R. § 404.1569a(b)). If a claimant has significant nonexertional limitations, then the finding on the grids is no longer mandatory. See Collins v. Comm'r of Soc. Sec., 357 F. App'x 663, 670 (6th Cir. 2009); SSR 85-15, 1985 WL 56857, at *1 (S.S.A. 1985); SSR 83-14, 1983 WL 31254, at *1 (S.S.A. 1983). Instead, the ALJ applies the grids as a framework. See SSR 85-15, 1985 WL 56857, at *1; SSR 83-14, 1983 WL 31254, at *1. "In these situations, the ALJ must elicit additional evidence, such as expert testimony, to identify jobs in the national economy which the claimant could perform." Amir, 705 F. App'x at 451.

Here, the ALJ recognized that Maze has nonexertional limitations that allow her to "perform only simple, routine tasks," preferably while working with "objects versus people." (R. at 20.) Nevertheless, the ALJ still treated the grids as requiring him to find Maze not disabled. This was appropriate because the nonexertional limitations the ALJ found Maze to possess did not

"significantly limit the range of work permitted by [her] exertional limitations," as evidenced by how she worked for many years despite having these mental health limitations. Collins, 357 F. App'x at 671 (quoting Cole v. Sec'y of Health & Hum. Servs., 820 F.2d 768, 771 (6th Cir. 1987)); Strimel v. Berryhill, No. 2:16-CV-226-MCLC, 2017 WL 4127610, at *7–8 (E.D. Tenn. Sept. 15, 2017) ("An allegation of a nonexertional limit is insufficient to eliminate the grids as an option; rather the key factor is 'whether the alleged impairment is severe enough to alter the conclusion that the claimant could do a full range of work at the specified level.'" (quoting Cole, 820 F.2d at 772)); see also Maloney, 211 F.3d 1269, 2000 WL 420700, at *2. Because the ALJ was required to rely on the grids, he did not need to elicit additional evidence, such as the expert testimony of a vocational expert, to show whether there is sufficient work still available to Maze. Thus, the court finds that the ALJ properly found Maze's RFC allowed her to perform a significant number of jobs existing in the national economy.

## III. CONCLUSION

For the foregoing reasons, the Commissioner's decision that Maze is not disabled is affirmed.

IT IS SO ORDERED.

         s/ Tu M. Pham
         TU M. PHAM
         United States Magistrate Judge

<u>July 27, 2018                    </u>
Date